IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MARIA D. MONTES-ROSARIO,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GAP, INC., <u>et al.</u>,**<br><br>**Defendants.** | **CIVIL NO. 12-1654 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff Maria D. Montes-Rosario initiated this action against her employer –Gap– complaining of age discrimination and retaliation in violation of Federal and Puerto Rico law.[1] Before the court is Gap's "Motion for Summary Judgment" (Docket No. 153); which Montes opposed (Docket No. 157). Gap replied (Docket No. 163) and Montes surreplied (Docket No. 171).[2] For the reasons explained below, the motion is GRANTED IN PART and DENIED IN PART.

Montes has been a Gap employee since 2001. She started working as a part time employee at the Gap Outlet Store in Canóvanas, Puerto Rico, and on August 31, 2003, became a full-time employee. <u>See</u>, Docket No. 154, Defendants' "Statement of Uncontested Material Facts in Support of Summary Judgment" ("SUMF") at ¶ 7. Since the date she became a full-time employee, her

---

[1] More specifically, the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); and Puerto Rico's (1) Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146, et seq. ("Law 100"), and (2) Law No. 115 of December 20, 1991, 29 P.R. Ann. Stat. 194 et seq. ("Law 115"). The complaint mentions GAP, Inc., Gap Puerto Rico, Inc. and GAP P.R., Inc. Unless otherwise stated, the court jointly refers to these entities as "Gap."

[2] In all, the parties submitted almost 1,176 statements of fact (as proposed statements of fact, additional statements of fact, and their corresponding opposing statements) and over 1,400 pages of supporting documents, some of which are irrelevant for purposes of summary judgment. Although the court reviewed each and every statement submitted by the parties and the supporting documents, it will only refer to facts that are material for purposes of summary judgment as mandated by Fed.R.Civ.P. 56.

employment classification and full-time status have not changed. SUMF at ¶ 9. She complains of discrimination because of her age, and of retaliation for complained of discrimination. At the time the complaint was filed in 2012, she was 60 years old. SUMF at ¶ 10. Gap challenges the action on a number of grounds.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013).

## II.   DISCUSSION

### A. Exhaustion

GAP PR Inc. and GAP Puerto Rico Inc. allege Montes failed to exhaust administrative remedies or include any cause of action against them in her EEOC charge (Docket No. 153 at pp. 4-5). In general, an ADEA action may only be brought against the parties identified as the respondent in that charge. González v. Ritz Carlton Hotel Co. of Puerto Rico, 241 F.Supp.2d 142, 145 (D.P.R. 2003). It is undisputed that neither GAP P.R. Inc. nor Gap Puerto Rico, Inc. appears on the charge; only GAP Inc. does.

Montes argues GAP Inc., Gap Puerto Rico, Inc. and GAP P.R., Inc. are single and/or joint employer and thus, neither GAP Inc. nor Gap Puerto Rico had to be included in the charge (Docket No. 157 at p. 5). Under the "single employer" or "integrated employer" doctrine, two nominally separate companies may be so interrelated as to constitute a single employer subject to liability under the ADEA. Torres-Negrón v. Merck & Co., Inc., 488 F.3d 34 (1st Cir.2007); Ashe v. Distribuidora Norma, Inc., 7 F.Supp.3d 134, 145-146 (D.P.R. 2014).

By defendants' admissions, Gap Inc. and/or GAP Puerto Rico, Inc. were at all times relevant to the complaint Montes' employer. See, Docket No. 154 at ¶ 2. And Montes has not provided evidence confirming the factual or legal connection between GAP Inc. (the entity listed in the EEOC charge) and the other entities. As such, the claims against GAP P.R., Inc. must be dismissed. See, González, 241 F.Supp.2d at 146 (failure to adequately specify factual connections between corporate entities considered fatal to maintaining claim against defendant not included in charge).

**B. Timeliness**

Gap contends most of Montes' claims are time-barred because she did not file charges of discrimination with the Equal Employment Opportunity Commission within 300 days of the events she complains about (Docket No. 153 at pp. 11-14). In deferral jurisdictions like Puerto Rico, the ADEA requires an aggrieved individual to file a charge of discrimination with the EEOC or a state deferral agency not later than 300 days after the event.[3] Actions under Law No. 100 are subject to the one year limitations period set in Article 1868 of the Puerto Rico Civil Code. Only those actions that took place within the limitations period are actionable. Rathbun v. Autozone, 361 F.3d 62, 73 (1st Cir. 2004); Campbell v. BankBoston, 327 F.3d 1, 11 (1st Cir. 2003).[4] Montes filed the charge on April 16, 2010. SUMF at ¶ 4; Docket No. 154, Exh. A.

Gap groups the allegations into two main categories. First, allegations in paragraphs 17, 29, 30, 41, 42, 49, 54-58, 60-62, 65-69 and 70 of the complaint (Docket No. 153 at pp. 12-13).[5] Second, allegations of incidents under the tenure of Alvin Díaz, former General Manager (who ceased to be the General Manager on October 5, 2008), referred to in paragraphs 18-27 of the complaint (Docket No. 153 at p. 17). For the most part, both sets of allegations refer to discrete and separate acts occurring prior to May 31, 2009 -and even April 16, 2009- and thus, outside of the 300-day and one-year filing periods.

---

[3] See, American Airlines v. Cardoza-Rodríguez, 133 F.3d 111, 122 (1st Cir. 1998)(noting that Puerto Rico is a deferral state within the scope of ADEA such that charges of unlawful age discrimination must be filed within 300 days after the alleged unlawful practice occurred).

[4] Discrete acts include terminations, failures to promote, refusals to hire, transfer denials, assignments, evaluations, reprimands, and warnings. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Each such act starts a new clock for filing charges alleging that act. Id.

[5] They include (i) assignment to work most of the time in the fitting room beginning in 2006-2007, while younger employees were rotating out of the fitting room on a daily basis (¶¶ 29-30); (ii) unwarranted verbal reprimands, a lower "score" than younger employees, and a promotion denial; and (iii) denial of request to work more than 32 weekly workhours (¶¶ 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 60-62).

Montes seems to so acknowledge yet characterizes those actions as "one unlawful employment practice" linked to a "continuing violation," and on that basis, actionable within the charging period (Docket No. 157 at pp. 7-9). Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Ayala v. Shinseki, 780 F.3d 52, 56-57 (1st Cir. 2015); Morgan, 536 U.S. at 113. The essence of a discrete act of discrimination is that it forms a separate actionable unlawful employment practice. Morgan, 536 U.S. at 114. In consequence, no liability may be imposed under the ADEA for discrete acts occurring before May 31, 2009, and under Law No. 100 for those taking place prior to April 16, 2009.[6]

### C. Adverse Employment Actions

Gap alleges there are no adverse actions here (Docket No. 153 at pp. 14-31). The ADEA makes it unlawful for an employer to take an adverse employment action against an employee because of her age. Vargas v. Puerto Rican-American Insurance Company, 52 F.Supp.2d 305, 309 (D.P.R. 1999). Law No. 100 forbids adverse employment actions based on any one of several protected characteristics, including age. Cardoza-Rodríguez, 133 F.3d at 122. Law No. 115 makes it unlawful to for an employer to undertake an adverse employment action against an employee in retaliation for having engaged in protected activity. Vélez v. Janssen Ortho, 467 F.3d 802, 809 (1st Cir. 2006).

---

[6] Nevertheless, Montes will be allowed to refer to the events that occurred prior to May 31, 2009 as background evidence in support of timely claims. See, Morgan, 536 U.S. at 113 (holding that if plaintiff does not meet the continuing violation standard, she may still use untimely events as background evidence for timely claims but may not recover damages for them); Rathbun, 361 F.3d at 76 (pointing out that a discriminatory act or practice that is not the basis for a timely charge of discrimination nonetheless may constitute relevant background evidence in a proceeding in which the same type of discriminatory act or practice has been timely challenged).

An adverse employment action materially changes the conditions of plaintiff's employ. Burns v. Johnson, 829 F.3d 1, 9 (1st Cir. 2016). In such actions, the employer takes something of consequence from the employee or withholds from the employee an accouterment of the employment relationship. Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996). To be considered adverse, the change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Gómez-Pérez v. Potter, 452 Fed.Appx. 3, 8 (1st Cir. 2011). An employee's displeasure at an action, standing alone, does not render it adverse. Marrero v. Goya, 304 F.3d 7, 23 (1st Cir. 2002). Whether it is so is gauged by an objective standard. Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010).

1. Verbal reprimands

Montes complains of verbal warnings or reprimands (Docket No. 1 at ¶¶ 29, 46).[7] Normally, warnings or reprimands do not qualify as adverse employment actions. They are a proper instrument for management to focus employees' attention on the need to correct some workplace behavior that the employer perceives as needing correction. Bhatti v. Trustees of Boston University, 659 F.3d 64, 73 (1st Cir. 2011); Fernández-Ocasio v. Wal-Mart Puerto Rico, Inc., 94 F.Supp.3d 160, 173 (D.P.R. 2015). To be actionable, a warning must carry tangible consequences, as when it is relied on to support material changes in terms and conditions of employment such as termination, suspension, change in compensation, payment of bonuses, and other benefits. Id. Montes has not shown any tangible consequences linked to those warnings or reprimands.[8]

---

[7] In this regard, she only claims, in a conclusory fashion, that Del Valle yelled more constantly at her and gave her more verbal reprimands (Docket No. 1 at ¶¶ 29, 46). Nothing else.

[8] It is uncontested that during her entire tenure as a full time employee, she always received an evaluation of being "On Target," and during several years she received evaluations of "Above Target" or "Significantly Above Target" (Docket No. 154 at ¶ 38 and Docket No. 157-1 at ¶ 38).

2. Comments

Montes asserts the Store General Manager said to her "mira, vieja ven aquí" (hey, old lady, come here), in front of employees and clients (Docket No. 1 at ¶ 42). She states the staff similarly referred to her as "la vieja" (the old one) since "forever," id., and that Gap confirmed the existence of inappropriate comments in 2007 or 2008, under the prior head of store. Id. The lack of specificity over when the comments may have been made and under what circumstances make them too vague to configure a materially adverse employment action. See, Menéndez v. Scotiabank, 134 Fed.Appx. 454, 456 (1st Cir. 2005)(dismissing age discrimination claim in part because plaintiff did not submit any evidence as to when the allegedly ageist statements were made or in what context); González v. El Día, 304 F.3d 63, 69-70 (1st Cir. 2002)(rejecting allegedly ageist remarks in absence of evidence regarding context in which they were made; it was far from clear the remarks bespoke any age-based animus).[9]

3. Work Hours

Montes complains of reduction in work, as she was not scheduled for as many hours a week as she wanted (Docket No. 1 at ¶ 48).[10] Gap contends there is no adverse action because: (i) as a full-time, non-exempt sales associate, Montes was not entitled to work any more than 30 hours a week; (ii) she recognized that she works an average of 32 a week, which is well within company regulations; and (iii) based on her earnings from 2004 to 2013, during her tenure as a full-time

---

[9] See also; Marrero v. Schindler, 494 F. Supp. 2d 102, 110 (D.P.R. 2007)(assertion that immediate supervisor referred to plaintiff as "viejo" and "viejito" on "a constant" or "daily basis" held insufficient to a show hostile work environment); Almontasser v. New York City, 2014 WL 3110019, *8 (E.D.N.Y. July 8, 2014)(assertion that plaintiff was "frequently" told he was "too old" considered "too vague" to support claim).

[10] Although not clearly articulated, Montes seems to suggest that the reduction in the amount of hours was not an adverse action *per se*, but resulted in a "more hostile" work environment because of her complaints to management about the disparate treatment she was allegedly receiving (Docket No. 157 at p. 34). She, however, represented there is no hostile work environment claim here (Docket No. 171 at p. 8). The court will not create the ossature for parties' arguments.

employee of Gap, she has always worked on average 30 or more hours a week and never been paid for less than 34 hours on average during the past decade (Docket No. 153 at pp. 18-19).

A change in work schedule does not usually qualify as an adverse employment action. Fernández-Ocasio, 94 F.Supp.3d at 171-172. A plaintiff who claims the contrary, must be specific about the time frame that the new schedule applied to, and about how that schedule deviated from the schedule it replaced. Id. at 172. Too general time estimates are insufficient to establish that an adverse employment action occurred. Id. (internal citations omitted). Montes herself admits that the amount of hours assigned to her was well within company regulations, and does not point toward factual elements demonstrating why in that context the assigned hours were discriminatory and materially adverse.[11]

    4. Compensation

Montes claims that in July of 2009, she only received a raise of eleven cents (0.11), which constituted a lower salary increase than younger associates (Docket No. 1 at ¶ 32). GAP counters that a pay increase is a benefit, not an adverse action, pointing out that GAP employees have no

---

[11] In plaintiff's own words:
    Q:    Do you have knowledge that that [sic] is the Company policy?
    R:    Correct.
    Q:    The company regulations say that an employee that is full time works 30 hours or more an average of 30 hours or more a week.
    R:    Correct
    Q:    Up to 40?
    R:    Correct.
    Q:    Where does it say 40 hours?
    R:    [PAUSE] At no time. It only says more than 30 hours.
    Q:    Ok. Than [sic], if you work an average of 32 hours, or at that time in 2010, which is when we are talking about "working an average of 32 hours" you were within the company regulations.
    R:    Correct.
    Q:    And you had knowledge that you were within the company regulations?
    R:    Correct.

Docket No. 154, Exh. E (Part I) at p. 91. Moreover, in response to the summary judgment motion, Montes did not oppose defendants' request on this issue.

right to an automatic annual raise in their compensation as a condition of their employment (Docket No. 153 at p. 1). Salary differentials, however, are considered materially adverse. See, Russell v. Principi, 257 F.3d 815, 819 (D.C.Cir. 2001)(denial of discretionary monetary bonus considered adverse employment action).

There may be legitimate nondiscriminatory reasons for the employer's decision to award the raise in question. To that end, Gap points out that (i) other sales associates at GAP received no salary increases in years when Montes did; (ii) she was one of the highest paid employees at the GAP store; and (iii) she has received a merit-based increase in her hourly rate every year for the past 12 years (Docket No. 153 at p. 16). The issue is not whether the plaintiff received increases but whether she received a lesser raise than similarly situated employees. See, Taher v. Wichita State University, 526 F.Supp.2d 1203, 1218 (D. Kansas 2007)(so noting). And so Montes directs the court's attention to several individuals (including Jenny Rodríguez and Julio Rosario), who were younger than she but were compensated at a higher regular rate of pay (Docket No. 157 at p. 16).

For that reason, she has opened the door to further inquiry into the facts underlying the difference in compensation. See, McIntyre v. Longwood, 658 F.Supp.2d 400, 415 (E.D.N.Y. 2009)(recognizing plaintiff may establish *prima facie* case of discriminatory compensation by showing that a co-worker outside the protected class performing similar work was compensated at a higher rate). To counter Montes, Gap relies on a number of documents, including a 40-page long chart with names, codes, grades, ethnic group, and other information (Docket No. 154, Exh. B and Exh. D (incorporating by reference a series of documents, including a chart made and submitted as Exh. Z). Yet the documents are extremely hard to understand and decipher, and by extension,

Case 3:12-cv-01654-PAD-SCC   Document 172   Filed 09/30/16   Page 10 of 16

Maria D. Montes-Rosario v. Gap, Inc. et al.
Civil No. 12-1654 (PAD)
Opinion and Order
Page 10

insufficient to sustain summary judgment on the issue of whether Montes was, as she has asserted, discriminatorily treated with respect to compensation.[12]

### 5. Fitting Room

Montes alleges that, from 2011 to 2013, she was assigned most of her time to work in the fitting room as a penalty or retaliation for (i) filing the EEOC complaint on April 16, 2010 and (ii) the subsequent visit of an EEOC investigator to investigate her charge of discrimination on November 2, 2011 (Docket No. 157 at pp. 30, 32). She claims that as time passed, her fitting room assignments grew up from 55 in year 2010 to 152 in year 2012. Id. at pp. 30-32. She describes the filling room as the sales representative's least desirable position a/k/a the "punishment zone" or the "penalty zone." Id. at p. 17. She states that in her case, the assignment was without rotation and for an inordinate amount of time, in contrast to younger co-workers, who rotated daily in different areas of the store (Docket No. 171 at pp. 9-10). Depending on how the record is interpreted, the assignment may be materially adverse.

First, Montes refers the court's attention to 89 paragraphs of an Unsworn Declaration under Penalty of Perjury prepared by her, and 80 proposed statements of uncontested facts, without a specific reference to a page of paragraph supporting her contention (Docket No. 157 at p. 14), and

---

[12] In the same way, Gap mentions or suggests that given Montes was near the top of the compensation scale, her salary increases were by necessity smaller (Docket No. 153 at p. 160). The employee's position in a compensation scale may provide a nondiscriminatory reason for smaller salary increases or bonuses in appropriate circumstances. See, Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 469-471 (1st Cir. 2007)(rejecting discrimination claim in case where plaintiffs' salaries were at upper end of salary scale for their respective career positions). Even so, Gap has presented no evidence describing the scale and how it is administered. The record is not clear on what it is that Gap specifically means by scale. Does it mean that compensation is determined by a formula predicated on a number of factors (such as seniority, educational status, overall work experience)? If so, which factors? In that case, how does pay rate correlate to the factors upon which the scale is based? Does the scale have a compensation range (e.g. a minimum and a maximum)? How are increases evaluated and approved? How do employees compare to each other in the scale in light of individual and scale-set characteristics? Without these evidentiary elements, it is not feasible to assess Gap's claim of entitlement to summary judgment based on a compensation scale. See, Smith v. Voorhees College, 2007 WL 2822266,*6 (D. S. Car. June 14, 2007)(denying summary judgment because based on evidence presented to the Court, there was no explanation on how scale criteria applied to comparators in reaching a salary decision that resulted in compensation discrepancies). Cf. Strag v. Board, 55 F.3d 943, 946-947, 950-951 (4th Cir. 1995)(no evidence rebutting neutrality in salary decisions based on a scale).

points to 14 pages of a Summary of a Weekly Time Card Entries, without indicating the specific portion in those pages that would support her claim. As such, her statement seems unsupported. See, L.Civ.R. 56(e), which requires "a citation to the specific page or paragraph of identified record material supporting the assertion."[13]

Second, even if the Weekly Time Card reports were useful, the fact that Montes was scheduled to work or assigned to the fitting room "x" amount of days a month, does not necessarily mean that she actually worked those days during said month. In her own words: ". . . [d]efendants' weekly time card reports are not 100% accurate, since there are days in which I was assigned particular chores, but was instructed to do others, and such change is not reflected on the time card reports" (Docket No. 157-2 at ¶ 3).

Third, it remains uncontested that (i) the fitting room was part of Montes' duty as a sales associate; and (ii) it was an important assignment for Gap, as the fitting room and cash register (a/k/a as cashwrap) require the most experienced sales associate to cover as those are the two priority areas (Docket No. 154, Exh. O at p. 10).[14] And requiring an employee to perform her job is not considered an adverse employment action even if it involves more work. See, Morales-Valledares v. Potter, 605 F.3d 27, 38 (1st Cir. 2010)(so recognizing).

At the same time, the record is not clear as to whether Montes was the most experienced associate in the store when she was assigned to work in the fitting room. Nor does it shed much light on who (if anyone) was assigned to that area in addition to Montes, and if so, with what

---

[13] Montes finally refers to the deposition testimony of Carol Sonni (Docket No. 157, Exh. 7 at p. 56). Sonni's testimony does not support her statement.

[14] According to one of the Procedures Manual called "Role of the Manager on Duty, Outlet 101: New Management Development" fitting room and cashwrap are two priority areas because customers "need our help to open fitting rooms, to get additional sizes, share credit benefits, complete outfits and to complete ring up their purchases." See also, Exh. D2 at pp. 61, 62 and 65, Deposition Transcript of Mr. Alexis Valedón-Fernández, Senior Employee Relations Manager of Gap, Inc.

frequency; the seniority of that person (if anyone was if fact assigned to the area at issue); why there was (as Montes claims) an increase in the frequency with which she rather than other employees was assigned to the fitting room; when (if at any point) Montes' assignments increased; what percentage of Montes' worktime the assignment represented; and what were the particular characteristics of the assignment.[15] Depending on the answer to these questions, the assignment may be considered sufficiently adverse to be actionable.[16] See, Mogehan v. Napolitano, 613 F.3d 1162, 1166 (D.C.Cir. 2010)(increase of workload five or six times that of other employees materially adverse). Paul v. Postgraduate Center, 97 F.Supp.3d 141, 196 (E.D.N.Y. 2015)(if not adequately explained, increasing an employee's workload may be an adverse employment action when the increase is heavily disproportionate to the workload of similarly situated employees).

    6. Failure to promote

Montes asserts that in December 2009 defendants failed to promote her to the position of Stock Supervisor, instead promoting a substantially younger employee, Jenny Rodríguez, who in her view, was not qualified for the position nor had the required experience for it. Failure to promote is considered materially adverse. See, Rathbun, 361 F.3d at 73-74 (so considering promotion denial). To be actionable, the claim must be accompanied by direct or indirect evidence of discrimination.

---

[15] E.g. where that particular work station was; how distant it was to other store locations; what were the tasks of the employee(s) assigned to the station; what were the tasks of employees assigned to other work areas; how they compared to those of the fitting room; the degree of interaction with the public and other employees; whether it exposed the employee to any particular danger; and any other factor relevant to the assignment.

[16] If it were actionable, it would have to be placed within the appropriate timeframe to determine the extent to which it factually supports Montes' disparate treatment and retaliation claims. See, Fernández-Ocasio, 94 F.Supp. 3d at 173-174 (rejecting retaliation claim in part because adverse employment actions occurred more than three months after protected activity). The record is somewhat murky as to when those assignments may have specifically occurred.

Case 3:12-cv-01654-PAD-SCC   Document 172   Filed 09/30/16   Page 13 of 16

Maria D. Montes-Rosario v. Gap, Inc. et al.
Civil No. 12-1654 (PAD)
Opinion and Order
Page 13

In the absence of direct evidence of intent to discriminate, evidence must be presented on the position's title, duties or tasks; whether it was vacant and plaintiff applied for it; the requirements of the position; the selection process undertaken to fill the position; criteria actually used to assess candidate(s); plaintiff's qualifications; qualifications of the individual chosen; identity and position of decision-maker and of participants in the decision-making process; and any other element(s) considered relevant to the claim in the context of the litigation where it is raised. The evidence may be organized and presented by way of the burden-shifting framework set in McDonnell Douglass v. Green, 411 U.S. 792 (1973). See, Chouinard v. New Hampshire Department of Corrections, 157 Fed.Appx.322, 323 (1st Cir. 2005)(applying burden-shifting framework to failure to promote claim); Rathbun, 361 F.3d at 73-74 (same).

Moving from the general to the particular, a Stock Supervisor in Gap is the employee that supervises merchandise handling process, provides on the job training for and supervises the daily activities of all non-sale and/or stocks associates, maintains an organized stockroom, oversees replenish process, and provides manager with feedback regarding staff performance. SUMF ¶ 131.[17] It reports to the Head of Store or Operations Manager, creates partnership with all members

---

[17] According to the Stock Supervisor Job Description, the essential duties and responsibilities of the Stock Supervisor are the following: supports and ensures execution of all shipment receiving and processing procedures to floor ready standards; partners with appropriate manager to direct shipment placement on sales floor; ensures floor is replenished per Company guidelines; follows up on staff to ensure accuracy; performs transfers of damaged and defective merchandise, completes re-tickets and charge sends; oversees and executes markdowns in a timely and accurate manner; audits markdowns to ensure accuracy; tracks productivity and ensures that the team is meeting the standard for all non-sell tasks; provides feedback to manager regarding merchandise-handling concerns/opportunities; ensures all delivery information is recorded and accurately reported; communicates staffing requirements to manager; communicates daily goals and priorities to stock associates, redirects activities as necessary to achieve productivity standards; trains and coaches stock associates to meet productivity standards; coordinates stock associate break and shift change schedules to maximize productivity and meet federal and company requirements; communicates feedback to manager regarding stock associate performance; models, encourages and demonstrates customer service and selling behaviors when on the sales floor; recognizes customer cues and supports customer service expectations; models and encourages a healthy work environment; positively motivates staff to ensure a team-working environment; maintains all shipment related paperwork to meet audit requirements; manages shipment supplies and fixtures and communicates need to manager; maintains company standards of neat, clean and organized stockroom; ensures stockroom and stockroom activities meet Risk Management requirements; communicates employee accidents to management immediately; enforces Loss Prevention procedures as related to back room standards and employee policies; influences employees to support an operationally efficient and effective process driven environment. SUMF at ¶ 132.

of management and supervises the daily activities of the Stock Associates. SUMF ¶ 133. The position requires: ability to model professional behavior, as outlined in the Code of Business Conduct, at all times; ability to create a positive work environment; ability to listen to feedback and take constructive action; ability to organize and prioritize multiple tasks and take the initiative; effective communication skills; ability to motivate associates to proactively perform replenishment tasks which result in the customers' satisfaction. SUMF at ¶ 134.

It is unclear who the previous Stock Supervisor was and why the position became vacant. But the Canovanas' Gap Outlet General Manager, Ms. Astrid Del Valle, appointed Montes acting Stock Supervisor on a temporary basis from November 8, 2009 to December 12, 2012. SUMF ¶ 130.[18] However, Montes was not ultimately promoted. Instead, Rodríguez was chosen for the position. GAP claims Montes cannot show that (i) Montes herself was qualified for the position, and (ii) Rodríguez was similarly qualified or less qualified than her. What is more, according to Gap, Rodríguez was more qualified than Montes and more knowledgeable than Montes as to key responsibilities of the position. And along the same line, it contends that Montes' tenure as acting Stock Supervisor had been deficient (Docket No. 153 at pp. 19-24).

When the employer claims to have promoted one person over another on the basis of qualifications, the question is not which of the aspirants was better qualified, but rather, whether the employer's stated reasons for selecting one over the other were pretextual. See, Rathbun, 361 F.3d at 74 (so noting). In a rare case, the disappointed applicant may be able to prove pretext by showing that she was in fact better qualified than the individual selected. Id. But that is an uphill

---

[18] Under the Acting Program Agreement Letter entered into by Montes, Astrid Del Valle and the District Manager, Mark Motley, Montes acknowledged that she would assume the acting responsibility on November 8, 2009 on a temporary basis, which will not extend beyond December 12, 2009. SUMF at ¶ 135 and Docket No. 154, Exh. R.

battle, for in the absence of strong objective evidence, proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext. Id. Subjective evidence of competing qualifications seldom provides a principled way for a factfinder to determine whether a given employment decision, even if wrong-headed, was anything more than a garden-variety mistake in corporate judgment. Id.

With the benefit of the record as a whole, Montes may be said to have cleared those hurdles for purposes of resisting summary judgment. She submitted testimony that contradicts or questions: (i) the process that was allegedly followed to fill up the position; (ii) the weight given to her previous "experience" as the acting stock supervisor, given that Rodríguez did not have the experience, and was trained after being hired for the position; (iii) the role that Mr. Motley had in the selection process; and (iv) the identity of the persons who ultimately participated in the decision-making process, and what role different persons may have had in influencing the decision despite the discriminatory animus that Montes attributes them (Docket No. 157 at pp. 18-27). In the same way, the factual basis for Gap's characterization of Montes' performance is unclear.[19]

---

[19] For example, on the one hand, Gap claims that (i) Carol Sonni, the General Manager, was involved in the process and interviewed the final two candidates – Montes and Rodríguez (SUMF at ¶¶ 141-142) with the participation of the Manager, Astrid Del Valle (SUMF at ¶ 145); (ii) during the interview Montes was asked about her experience and performance as acting stock supervisor; (iii) she responded to Sonni's concerns as to how she had performed (SUMF ¶ 148), and about many aspects of the Stock Supervisor Position (SUMF ¶ 149); (iv) but Sonni found that Montes was not knowledgeable of the process (SUMF ¶¶ 152 and 153); (v) Sonni also interviewed Rodríguez and asked same questions to her (SUMF ¶¶ 155 and 156); (vii) Sonni understood that Rodriguez' answers were more accurate, and that she had the knowledge plaintiff was lacking (SUMF ¶ 157). Nevertheless, Montes questions the process allegedly followed by Gap claiming that: (i) there are inconsistencies as to the description of the process given by Sonni and Del Valle (Plaintiff's Statement at ¶ 59) (for example, one of them claims that a third candidate was interviewed for the position whereas the other denies interviewing a third candidate; (ii) she gave correct answers to all questions pertaining to the position and her experience as the Acting Stock Supervisor (Answer to SUMF ¶ 152); and (iii) at no time Sonni commented on her alleged performance issues during the interview. Likewise, she adds that (i) Rodriguez did not have any experience, but was trained for the stock position after she was selected (Answer to SUMF ¶ 157 and Plaintiff's OSMF ¶ 75); (ii) Motley's opinion as to Montes' interview is of no importance since the alleged visit did not last more than 20 minutes (OSMF ¶ 50); (iii) when comparing experiences at Gap between Montes and Rodriguez, the former would have the edge on previous work experience at GAP and in an acting capacity at that job supervisor position; and (iv) an individual (Gareth Santiago) heard a conversation, in the store, where Santa Arroyo, Assistant Manager told Astrid del Valle, that plaintiff was not the adequate person to occupy the Stock Supervisor position because she was old ("estaba vieja") and there were other people that could do the job. Furthermore, Motley seems to have said that when Montes was Acting Stock Supervisor she was a strong, on-target performer, technically sound and with a wealth of knowledge (Docket No. 157 at p. 24).

Case 3:12-cv-01654-PAD-SCC   Document 172   Filed 09/30/16   Page 16 of 16

Maria D. Montes-Rosario v. Gap, Inc. et al.
Civil No. 12-1654 (PAD)
Opinion and Order
Page 16

Viewing the record in light most favorable to Montes with the benefit of reasonable inferences flowing from the evidence as has been presented here, a genuine factual dispute exists as to whether the decision to award the position to Rodríguez instead of Montes was motivated by Montes' age. A claimed difference in qualifications may be sufficient to ground an action if accompanied by independent evidence of pretext or discriminatory animus. Rathbun, 361 F. 3d at 75.

### III.   CONCLUSION

Defendants' motion for summary judgment (Docket No. 153) is GRANTED IN PART AND DENIED IN PART. The action is DISMISSED as to GAP PR Inc. The claims arising from comments, reprimands, warnings and work hours are DISMISSED under the ADEA and Law No. 100. The claims involving failure to promote, compensation rate, and retaliation based on fitting-room duty remain.

There are significant gaps in the summary judgment record preventing disposition of those claims under Rule 56 of the Federal Rules of Civil Procedure.[20] Evidence of comments, and of events outside of the charging period may be brought at trial as background evidence in support of timely claims (albeit the jury will be instructed that they do not support liability in themselves). An order for the parties to submit a Joint Proposed Pretrial Report will follow.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2016.

> s/Pedro A. Delgado-Hernández
> PEDRO A. DELGADO-HERNÁNDEZ
> United States District Judge

---

[20] See, Rivera-Ruiz v. González-Rivera, 983 F.2d 332, 334-335 (1st Cir. 1993)(denying motion for summary judgment in employment discrimination case where record was unclear).